# Thweat, Adm'r, *v.* Stamps.

## *Trover.*

1. *Growing crops pass to purchaser of land at execution sale.*—Growing crops are part of the realty, and pass with the title to the land to a purchaser at execution sale.

2. *"Rails and brick," when personalty and when realty.*—'Rails and brick" not connected with the freehold are personal property, and do not become fixtures until they are actually or constructively annexed to the realty.

3. *Trover ; fixtures annexed to the realty not recoverable in.*—Trover lies only for the conversion of personal property and can not be maintained, at least between vendor and vendee, to recover fixtures which form part of the freehold.

4. *Fixtures annexed to realty ; action lies for refusal to allow severance.*—When fixtures are annexed to the freehold, a demand should be made for the right of removal, and on refusal an action lies for preventing the owner from exercising the right to sever.

Vol. lxvii.

[Thweat, Adm'r, v. Stamps.]

5. *Trover; what necessary to sustain action of.*—To sustain an action of trover the defendant must have unlawfully assumed dominion over the property in defiance or exclusion of the plaintiff's right, or withheld possession from him under claim of title inconsistent with the plaintiff's.

6. *Conversion; what necessary to constitute.*—A vendee of land whose tenant annexed "rails and brick," which were on the land at the time of the sale, to the realty, is not guilty of a conversion unless he directed, induced, or ratified the act of his tenant in the exercise of an unauthorized dominion over the property.

APPEAL from Talladega Circuit Court.

Tried before Hon. JOHN HENDERSON.

On December 7th, 1874, appellee P. A. Stamps bought a tract of land lying in Talladega county, at sheriff's sale, and soon afterwards went into possession of it. At the time of the sale there was a lot of bricks on the land, and also five thousand rails, which were the property of L. Dickinson, who owned the land until it was sold by the sheriff. A part of the land had been planted in wheat before the sale. Dill, who resided on the land and was defendant's tenant, used the bricks to build a chimney to a house situated on the land, and used the rails to build a fence on the premises. The defendant did not order or direct his tenant, Dill, to use the rails or brick, and when the latter asked his permission to do so, replied that he might do so "so far as he cared." The wheat was gathered in the summer of 1875 by Dill and others, and defendant received two-thirds of it from them. On the 10th day of February, 1877, Dickinson, appellant's intestate, brought this action of trover against Stamps to recover the "rails and brick" and the wheat received by him from Dill and others, and the foregoing facts appearing in evidence, the court charged the jury, that plaintiff could not recover anything for the "rails or brick" unless the evidence satisfied them "that the defendant directed or in some way induced the bricks to be used in building the chimney, or the rails to be put on the fence." To this charge the plaintiff excepted. The court also charged the jury that "if they believed from the evidence that the wheat was sown on the land before the sale by the sheriff, and had not been gathered at that time, the growing crop on the land was part of the land, and the title to the wheat passed to the defendant by his purchase at the sheriff's sale, and the plaintiff could not recover for the wheat." To this charge the plaintiff also excepted. The charges given by the court are assigned as error.

JOHN T. HEFLIN, for appellant. (No brief on file.)

SOMERVILLE, J.—It is well settled that growing crops

(7)

[Thweat, Adm'r, v. Stamps.]

pass to a vendee, with the title of land upon which such crops are standing at the time of sale. In this case, the wheat was in process of growth, and ungathered, at the time of the sheriff's sale, and was part and parcel of the realty. The interest, which the defendant in execution had in it, passed with the title of the land to the purchaser, and there was no error in the Circuit Court so charging the jury." Freeman on Executions, § 474; 4 Kent Com. 468; 3 Wash. Real Prop. 625, note (1); *Foote v. Colvin*, 3 Johns. 216; *Crews v. Pendleton* (1 Leigh. 297); 19 Amer. Dec. 750 and 752, (*note*).

The rails and brick were personal property so long as they remained disconnected from the freehold. They could not become fixtures until they were actually or constructively annexed to the realty.—Ewell on Fixt. 345; *McLaughlin v. Johnston*, 56 Ill. 163. And, since trover lies only for the conversion of personal chattels, it cannot be maintained for the recovery of such fixtures when annexed to and constituting part of the freehold, at least as between vendor and vendee. When so annexed, a demand should be made for the right or privilege of removal, and in case of refusal, an action would lie for preventing the plaintiff from exercising the right to sever. The evidence here shows no such demand.—Ewell on Fixt. 434-5, note (4); *Villas v. Mason*, 25 Wis. 310; *Miller v. Baker*, 1 Metc. 27.

In order to sustain the action of trover, moreover, there must have been, on the part of the defendant, some unlawful assumption of dominion over the property in question, in defiance or exclusion of the plaintiff's right, or else a withholding possession from the plaintiff, under a claim of title, inconsistent with his own. The defendant would not be guilty of a conversion unless he directed, induced or ratified the act of Dill, in his exercise of an unauthorized dominion over the property, if such it was under the evidence. 2 Greenl. Ev. § 642; Ewell on Fixt. 434.

The rulings of the Circuit Court were in harmony with these principles, and the judgment is affirmed.