# Fields v. Copeland.

*Action of Trover by Mortgagor Against Mortgagee.*

1. *Conclusion of witness, what calls for.*—A question as to whether parties in a conversation between them "disputed" or "agreed" calls for a conclusion or an opinion of the witness, and is objectionable. The proper course is to ask the witness to state all that he heard between the parties and let the jury determine whether there was dispute or agreement.

2. *Mortgagor of personal property; effect of payment of debt by.* When a mortgagor of personal property pays the mortgage debt after the law day of the mortgage, he is reinvested with title to the property and the right of immediate possession.

3. *Presumption; when indulged as to the terms of a mortgage.*—A mortgagor sued the mortgagee in trover, after payment of the mortgage debt and after the law day of the mortgage, to recover damages for the conversion of the property mortgaged. The mortgagor was a farmer, and the mortgage was executed on mules, cows and yearlings, and wagon and harness for supplies to make a crop. The mortgagee without consent of the mortgagor seized the property before default of the mortgagor. The mortgage was not set out in the record or any statement that it authorized the mortgagee to take possession of the property before default made. *Held,* that under these facts, and in the absence of any evidence to the contrary, and in support of the court below, the presumption will be here indulged that the possession of the property under the contract between the mortgagor and mortgagee was to remain in the mortgagor until default made in payment of the mortgage debt.

[Fields v. Copeland.]

4. *Seizure of mortgaged property before default; when unlawful.*
   If a mortgagee of personal property without consent of the
   mortgagor seizes the mortgaged property before default in
   the payment of the mortgaged debt, the seizure is unlawful
   and gives the mortgagor an immediate right of action, if done
   without authority under the mortgage, and in the absence of
   reason or ground which renders the possession of the prop-
   erty by the mortgagee necessary to preserve his security.

5. *A mortgagor is not compelled to accept when offered to him
   mortgaged property taken tortiously by the mortgagee.*
   Where a mortgagee tortiously takes possession of the mort-
   gaged property, the mortgagor is not compelled to receive it
   back if tendered to him, and no tender or offer to restore it
   will defeat his right of action or mitigate the damages; *a
   fortiori* where the property taken has deteriorated in condition
   or depreciated in value.

6. *Agreement of mortgagor; when no waiver of tort by mortgagee.*
   Where there has been a tortious seizure of mortgaged prop-
   erty by the mortgagee, an agreement by the parties that the
   mortgagor will receive back the property if in condition sat-
   isfactory to him, is no waiver of the tort committed by the
   mortgagee unless the property is accepted by the mortgagor
   in pursuance of the agreement.

7. *Right of seizure waived by mortgagee, cannot afterwards be ex-
   ercised by transferee.*—If a mortgage contains a provision
   that should the mortgagor sell or remove any of the mort-
   gaged property, the mortgagee should have power to take
   possession of the property mortgaged; and if the mortgagor
   does swap or exchange a portion of the property, and the
   mortgagee, without taking possession of the property, trans-
   fers the mortgage, he waives his right of seizure of the bal-
   ance of the property before default made, and his transferee
   cannot exercise this right because of the transaction of swap-
   ping which occurred before the transfer.

APPEAL from the Circuit Court of Blount.

Tried before the Hon. J. A. BILBRO.

Copeland sued Fields in trover. The plaintiff executed
a mortgage on personal property to the defendant.
Copeland also executed a mortgage to McEntire & Co.
on the same property and of date prior to the mortgage
to Fields. This mortgage contained a provision that
should the mortgagor sell or remove any of said prop-
erty then the mortgagee should have power to take pos-
session of the property mortgaged. The mortgagor did

sell a portion of the said property before the law day of the mortgage, but McEntyre & Co. did not take possession as they had power to do. After this disposition of a part of the property by Copeland, McEntyre & Co. transferred their mortgage to Fields. Before the law day of these mortgages Fields without consent of Copeland took possession of the property and disposed of a part of it. After the law day of the mortgages Copeland paid them in full and they were satisfied on the records; and he demanded the property. The property was not delivered to him but afterwards Fields offered to return two mules mentioned in the mortgage which Copeland refused to receive, because they were not in as good condition as when taken by the mortgagee. There was an agreement of some sort the terms of which are not clear about the return of the property by Fields, but seemingly to the effect that Copeland would accept the property if returned in as good condition as when taken by Fields. The mortgages were never foreclosed except as to one wagon for the value of which the mortgagor had credit.

(1). EMORY C. HALL, for appellant.—Conversion upon which a recovery in trover may be had must be a positive tortious act.—*Conner v. Allen*, 33 Ala. 515; *Rand v. Oxford*, 34 Ala. 474; *Bolling v. Curby & Bro.*, 90 Ala. 215. (2). There was no wrongful taking or appropriation of the two mules. The defendant did what he could and before suit to deliver them to the plaintiff. *Kinney v. S. & N. R. R. Co.*, 82 Ala. 368; *Taylor & Co. v. Hughes*, 88 Ala. 617. (3). If it was a conversion that the defendant disposed of the horse, mule and one of the cows before the law day of the mortgage the plaintiff with full knowledge of this fact contracted with the defendant in reference to the property and thereby ratified the tortious act.—*Steinhardt v. Bell*, 80 Ala. 208; *Singer Mfg. Co. v. Greenleaf*, 100 Ala. 272. (4). After default the legal title passes to the mortgagee; the equity of redemption remaining in the mortgagor will not support trover.—*Draper v. Walker*, 98 Ala. 310; *Thompson v. Thornton*, 21 Ala. 808.

R. T. ROBIN, *contra*.—After payment of the mortgage debt and demand for the property mortgaged and re-

[Fields v. Copeland.]

fusal of the demand trover will lie for conversion.—*Henderson v. Foy,* 96 Ala. 205; *Thweatt v. Stamps,* 67 Ala. 96; *Boling v. Curby,* 90 Ala. 215; *Frank v. Perkins,* 69 Ala. 369.

DOWDELL, J.—The ruling of the court below was free from error in sustaining plaintiff's objections to the questions put by the defendant to the witness Bert. Addington, who was sworn and examined on behalf of the defendant, as to whether the plaintiff and defendant "disputed" or "agreed" in the conversation had between them, and which, this witness was called to testify about. The questions called for a conclusion or opinion of the witness. The bill of exceptions states that the court remarked at the time of its ruling on the objections, "that it would be proper for the witness to state all that he heard between the parties, and let the jury determine whether the parties disputed or agreed." We think there can be no doubt of the correctness of this statement.

The property, for the conversion of which the suit was brought, was mortgaged by the plaintiff to the defendant, and as is disclosed by the record the defendant without the consent of the plaintiff took possession of the mortgaged property several months before the law day of the mortgage and consequently before any default could have happened. After the law day of the mortgage had passed the plaintiff paid off and discharged the mortgage debt in part by work and labor done for the defendant under an agreement with him, and in part with cash. This reinvested the plaintiff, mortgagor, with the title to the property, and with the right to immediate possession.—*Frank v. Pickens,* 69 Ala. 369.

The bill of exceptions states that while the defendant took possession of the property and before the mortgage debt had matured, he traded off the horse mule, one of the cows, a yearling, and a calf. The bill of exceptions further recited that there was evidence tending to show, that the defendant regained the possession of the horse mule, which he had traded off, and that after the payment of the mortgage debt by the plaintiff, and before this suit was instituted, the defendant offered to return the horse mule, and also the mare mule, to the plaintiff,

but that the plaintiff refused to accept the same. Quoting from the bill of exceptions, "The evidence tended to show that on account of the mule's condition (the horse mule) when returned it was worth $20 less than when the defendant took it." The evidence also tended to show, that the mare mule in controversy, when the offer of return was made, was in bad condition; that it was worthless. The bill of exceptions also recites, that "there was some conflict in the evidence as to whether the mules were in as good or worse condition when offered back to plaintiff, and when defendant took possession of the same." The bill of exceptions also recites, "The evidence further tended to show that several times before this suit was commenced and after the mortgage was paid off the plaintiff demanded of the defendant the property in question, and sued for, and the defendant failed to give it to him." The bill of exceptions further recites, "The evidence without conflict tended to show that the mortgage had never been foreclosed as to any of the property mentioned in the complaint, except the wagon, and it was sold under power of sale in the mortgage and plaintiff had credit for what it brought at the sale, in his settlement with the defendant." "Upon request in writing the court gave the affirmative charge in defendant's behalf as to the wagon." The bill of exceptions in stating the facts and the tendencies of the proof has some apparent inconsistencies. The mortgage is not set out in the record, nor any statement that the mortgage contract authorized the mortgagee to take possession of the property before default made. The plaintiff was a farmer engaged in farming upon rented lands in Blount county, and the debt for which the mortgage was given to secure was for advances and supplies to enable him to make a crop, and the property mortgaged was such as was necessary to the sustenance and aid of the mortgagor in making a crop. Under these facts, and in the absence of any evidence to the contrary, and in support of the ruling of the court below, the presumption will be here indulged, that the possession of the property under the contract between the mortgagor and mortgagee was to remain in the mortgagor until default made in payment of the

mortgage debt. No default had occurred at the time the property was taken in possession by the defendant, nor does the evidence in the case show that any reason or ground existed at that time rendering possession of the property by the mortgagee necessary to preserve his security. It follows, therefore, that the original seizure of the property by the defendant mortgagee, without the consent of the mortgagor, and without authority under the mortgage, was an unlawful assumption of dominion over the same and in defiance and exclusion of plaintiff's right and was therefore wrongful, and gave the plaintiff an immediate right of action in trover.—*Thweat v. Stamps,* 67 Ala. 96; *Henderson v. Foy,* 96 Ala. 205; *Boling v. Kirby,* 90 Ala. 222.

After the payment of the mortgage debt by the plaintiff, he was not bound to receive back property which had been wrongfully taken from him, and which had depreciated in value by use of the tort-feasor, and was not, at the time of the offer to return, in as good condition as when wrongfully seized. The general rule is that the owner cannot be compelled to accept property offered to be returned; and no tender or offer to restore it will defeat the right of action or mitigate the damages; this, of course, where the taking was tortious; *a fortiori,* where the property taken has deteriorated in condition or depreciated in value, will an offer to return not be sufficient.—*Stickney v. Allen,* 10 Gray (Mass.) 352; *Carpenter v. Dressor,* 72 Me. 377; *Norman v. Rogers,* 29 Ark. 365; *Bringard v. Stellwagen,* 41 Mich. 54; Am. & Eng. Ency. Law, Vol. 26, p. 851.

The propositions of law involved in written charges from one to six inclusive, requested by the defendant, are not in harmony with the principles laid down above and were properly refused by the court.

The bill of exceptions states that there was no dispute as to an agreement between the parties, but that each party had his version of the same. The version as given by each showed, that the return of the property seized by the defendant and the acceptance of the same by the plaintiff was conditional upon its being in a condition satisfactory to the plaintiff. Such an agreement did not amount to a waiver of the tort committed by the defend-

ant, unless the property had been accepted by the plaintiff in pursuance of such agreement. There was no evidence that plaintiff acquiesced in and consented to the wrong committed by the defendant in the seizure of plaintiff's property, and charge 7 which hypothesized this fact was thereby rendered abstract, and for that reason was properly refused.

The evidence also shows without conflict, that one of the mules covered by the McEntyre mortgage was swapped or exchanged by the mortgagor for other property before McEntyre & Co. transferred and assigned their said mortgage to the defendant. McEntyre & Co. not having availed themselves of their right as mortgagees under their said mortgage, of seizure on account of the action of the mortgagor in swapping or exchanging a part of the property mentioned in the mortgage, and subsequently transferring and assigning the mortgage to defendant, this would amount to a relinquishment of their right of seizure of the balance of the property contained in the mortgage before default made, and consequently conferred no such power or right of seizure before default on the defendant, who took the transfer and assignment after the transaction of swapping or exchanging was done by the mortgagor. Charge 8 states a contrary proposition and was therefore bad and properly refused.

There being no error in the record the judgment of the court is affirmed.